IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LORI M.,[1]                                                    Case No. 3:23-cv-00814-HL

             Plaintiff,                               **OPINION AND ORDER**

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

             Defendant.

_____

HALLMAN, United States Magistrate Judge:

       Plaintiff Lori M. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's applications for Social Security Income

("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act. 42 U.S.C.

§ 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and

REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.    Plaintiff's Applications**

Plaintiff alleges disability based on chronic pain, weakness, difficulty with ambulation and movement, the general loss of function due to degenerative changes of the cervical and lumbar spine, and right arm weakness and manipulation issues due to a right arm shoulder

disorder and right hand tremor. Tr. 301-08.[2] At the time of her alleged onset date, she was 47

years old. Tr. 40. She has completed high school. *Id*. She has no past relevant work. *Id*.

Plaintiff protectively applied for SSI and DIB on June 22, 2020, alleging an onset date of

January 26, 2019. Tr. 236-38. Her applications were denied initially on December 1, 2020, and

upon reconsideration on July 6, 2021. Tr. 125-29, 139-57. Plaintiff subsequently requested a

hearing, which was held on February 8, 2022, before Administrative Law Judge ("ALJ") Richard

Geib. Tr. 50-71. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 51. A

vocational expert ("VE"), DT North, also testified. Tr. 61-71. On March 23, 2022, the ALJ

issued a decision denying plaintiff's claims. Tr. 42. Plaintiff requested Appeals Council review,

which was denied on April 3, 2023. Tr. 1-7. Plaintiff then sought review before this Court.[3]

**II.    Sequential Disability Process**

The initial burden of proof rests upon the claimant to establish disability. *Howard v.

Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b),

416.920(b).

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 10).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. §
636. (ECF 3).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.  The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after her alleged onset date through the date of the ALJ's decision. Tr. 27.

At step two, the ALJ determined that plaintiff has the following severe impairments: lumbar and cervical degenerative disc disease/degenerative joint disease and a right shoulder disorder. *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 32. The ALJ then resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> [S]he can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, occasionally reach overhead with the right upper extremity, frequently handle and finger with right upper extremity, and should avoid even moderate exposure to work hazards.

Tr. 32-33.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a customer service representative or 911 telephone operator. Tr. 40.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a cleaner (housekeeping), marker, and router. Tr. 41. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 42.

### DISCUSSION

Plaintiff argues that the ALJ committed four errors: (1) improperly finding plaintiff's right upper extremity tremor non-severe at step two; (2) omitting plaintiff's right upper extremity limitations when formulating her RFC and posing questions to the VE at step four; (3) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony; and (4) improperly

weighing medical opinion evidence from Dr. Kroening-Roche that would preclude Plaintiff from sustaining full-time work. Plaintiff's arguments are discussed in turn below.

## I.    Step Two Finding

Plaintiff contends the ALJ erred at step two by failing to find her tremor severe. Pl.'s Opening Br., ECF 11, 17-18.

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. 20 C.F.R. § 404.1520(c). An impairment is severe if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c).

The step two threshold is low; the Ninth Circuit describes it as a "*de minimus* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).  As such, any "error at step two [is] harmless [if] step two was decided in [the claimant's] favor with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

Here, the ALJ found that plaintiff had a number of medically determinable and severe impairments at step two. Tr. 27. Concerning plaintiff's right hand tremor, the ALJ determined it was not a severe impairment. *Id.* The ALJ acknowledged that plaintiff has experienced "significant neurological symptoms" including her right hand tremor which could have initially been attributed to corticobasilar syndrome, but that her neurologist later "suggested she has a functional movement disorder related to alcohol use." Tr. 27. The ALJ ultimately determined that her tremor "and changing neurological symptoms are most likely results of alcohol abuse and withdrawal symptoms" and did "not cause more than minimal limitation in the claimant's

ability to perform basic work activities and is thus nonsevere." Tr. 29. The ALJ then went on to continue the sequential evaluation process and considered evidence and allegations pertaining to plaintiff's right upper extremity limitations. Tr. 18-23. Because the ALJ continued with the sequential evaluation process, "[u]nder well-established case law, any alleged error at step two was harmless." *Gary M. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00631-JR, 2023 WL 3276178, at *2 (D. Or. May 5, 2023) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)).

## II.    Evaluation of Plaintiff's Right Hand Tremor

Plaintiff asserts that the ALJ did not include all her impairments when formulating her RFC and posing hypothetical questions to the VE. Pl.'s Opening Br. 3-4. Specifically, plaintiff asserts that the ALJ should have included the overwhelming objective evidence of plaintiff's tremor, her subjective testimony regarding how the tremor affects her daily life, and her treating physician's recommendation that because of her right arm tremor and atrophy, she is unable to functionally use her right arm and hand. *Id.* at 3-15. Plaintiff further contends that the ALJ failing to consider plaintiff's right hand tremor when posing hypothetical questions to the VE was not harmless because each of the three jobs identified at step five require frequent handling and occasional fingering. *Id.* at 3; Tr. 41.

The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Id.* (RFC determination will be affirmed if supported by substantial evidence) (internal citations omitted). An ALJ's RFC

findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

An ALJ's depiction of a claimant's impairments to the VE must be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). In order to have sufficient evidentiary value, the dispositive hypothetical question posed to the VE must include all of the limitations which are supported by substantial evidence in the record, and which the ALJ has explicitly "accepted," usually as set forth in the RFC. *Cooper v. Sullivan*, 880 F.2d 1152, 1158 n.13 (9th Cir. 1989). An ALJ's hypothetical questions to the VE need not include limitations which the ALJ has found to be non-credible or accorded diminished evidentiary weight (as to claimant testimony or medical opinion evidence), so long as the ALJ makes specific findings explaining why the limitations were not probative, and therefore omitted. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004).

Plaintiff argues that the ALJ failed to include limitations from Dr. Kroening-Roche's opinion concerning her tremor, without providing legally adequate reasons for doing so. Pl.'s Opening Br. 14-17. Dr. Kroening-Roche, plaintiff's long-time treating physician, opined that because of plaintiff's right upper extremity limitations, plaintiff is unable to functionally use her right arm and hand and can only lift five pounds occasionally. Tr. 5305-06.

As discussed, the ALJ acknowledged that plaintiff has experienced "significant neurological symptoms" including her right hand tremor which could have initially been attributed to corticobasilar syndrome, but that her neurologist later "suggested she has a functional movement disorder related to alcohol use." Tr. 27. The ALJ ultimately determined that her tremor "and changing neurological symptoms are most likely results of alcohol abuse and withdrawal symptoms[,]" and that it had worsened during the alleged period of disability. Tr.

29.  However, the ALJ ultimately determined that the RFC includes "exertional, manipulative, and environmental imitations secondary to [plaintiff]'s severe impairment of right upper extremity disorder, and this would account for any symptoms related to the tremor." Tr. 29. To support this finding, the ALJ discussed how an EMG/nerve conduction study was normal with "no electrophysiological evidence for compressive mononeuropathy, cervical neuropathy, or brachial plexopathy." Tr. 37 (citing Tr. 5155-56, 5221-24). The ALJ also stated that despite plaintiff's resting tremor being persistent, her neurologist "downgraded his provisional diagnosis [of corticobasilar syndrome] and instead suggested she has a functional movement disorder related to alcohol use[.]" Tr. 29 (citing Tr. 2823).

The ALJ's determination that plaintiff's tremor "does not cause more than minimal limitation in [her] ability to perform basic work activities" was not supported by substantial evidence. The fact that plaintiff's nerve conduction study was normal, *see* Tr. 5155-56, and that her neurologist changed her tremor diagnosis to a functional movement disorder, *see* Tr. 2823, does not mean that handling and fingering on a frequent basis is acceptable given her persistent right hand tremor. To the contrary, Dr. Kroening-Roche opined that plaintiff suffers from functional limitations that limit the forceful or repetitive use of her right arm/hand because "given her tremor, [she is] unable to functionally use right arm/hand[.]" Tr. 5306. The ALJ failed to present evidence in the record to undercut the fact that plaintiff suffers from a right hand tremor, whether it be due to her neurological decline or a functional movement disorder. In fact, the ALJ cites several parts of the record throughout his opinion that support the fact that plaintiff continues to suffer with a right arm tremor regardless of whether it stems from a neurological or functional movement disorder. Tr. 36-38 (citing Tr. 600, 848-49, 870, 1866, 1928, 2204-05, 2756-57, 2787-88, 2853, 2860-61, 3486, 3561, 3711, 3959). Accordingly, the ALJ's finding in

plaintiff's RFC that she could frequently handle and finger with the right upper extremity was not supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ may not simply provide his own conclusion; he must also explain why his interpretation of the evidence differs from the doctors); *see also Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *13 (S.D. Cal. Mar. 5, 2024) (ALJ's failure to address plaintiff's right hand tremor when formulating the RFC was error).

Nor was this error harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error is harmless if it is "inconsequential to the ultimate nondisability determination."). To the contrary, it meant that the VE's testimony did not constitute substantial evidence to support the disability determination. *See Cooper v. Sullivan*, 880 F.2d 1152, 1158 n. 13 (9th Cir. 1989) (VE's testimony "cannot constitute substantial evidence to support an ALJ's determination as to a claimant's disability status unless it accurately reflects all of the claimant's limitations). The manipulative limitations the ALJ posed to the VE did not contain any individualized limitations regarding plaintiff's right hand tremor. Tr. 61-71. As a result, the VE identified three jobs – cleaner (housekeeping), marker, and router – with manipulative requirements of frequent handling and occasional fingering. *See* DOT 323.687-014, *available at* 1991 WL 672783; DOT 209.587-034, *available at* 1991 WL 671802; DOT 222.587-038, *available at* 1991 WL 672123. Because the VE's testimony was based on the ALJ's failure to accurately pose all of plaintiff's impairments, the VE's testimony did not constitute substantial evidence that plaintiff could perform those jobs, and the ALJ's error was not harmless.

## III.     Subjective Symptom Testimony

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony that she could not work on a regular basis due to her right arm weakness

and manipulation issues due to a right arm shoulder disorder and right hand tremor. Pl.'s
Opening Br. 4-13.

## A.    Legal standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL
5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony
about the severity and limiting effects of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591
(9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more
impairments that could reasonably be expected to produce some degree of symptoms.
*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the
impairment could reasonably be expected to cause the severity of the symptoms, but only show
that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the
symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and
convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that
they do not credit and must explain what evidence undermines the testimony. *Holohan v.
Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing"
standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.
2022).

General findings are insufficient to support an adverse determination; the ALJ must rely
on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony
regarding the degree of impairment, the ALJ must make a "determination with findings
sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit
claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is

not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.     Plaintiff's Testimony

Plaintiff reported that she could not work on a regular basis due to her right arm weakness and manipulation issues due to a right arm shoulder disorder and right hand tremor. Tr. 301-08. At the hearing, plaintiff testified that she feels that she is barely able to care for herself and has a mobility issues in addition to the tremor in her dominant right arm. Tr. 53. Plaintiff testified that even on a "good" day for her, she must have a friend come to take her of her share of chores (sweeping, mopping, wiping down the counters) at the home where she is living. Tr. 58. Plaintiff indicated that she is unable to type or use a computer mouse efficiently because she cannot use her right arm to do so. Tr. 53. She reported that she does not use her right arm to lift much of anything, for example, a jug of milk, but that she uses it occasionally to write down her thoughts onto a sticky-note. Tr. 54. Due to her right arm difficulty, she reported that when she has to send a text or email, she uses the talk-to-text feature in order to do so. Tr. 55. Regarding her use of alcohol, she stated that she has been sober since November 14, 2020, and that her tremor was persistent using or not using alcohol. Tr. 59.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 34. Plaintiff takes issue with the ALJ's analysis of how her testimony conflicts with the medical evidence and her activities of daily living. Pl.'s Opening Br. 10-14. Plaintiff argues these are not

clear and convincing reasons, supported by substantial evidence, for discounting her testimony. *Id.* The Court addresses each rationale in turn.

### C.    Contradictory Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

Here, the ALJ concluded that plaintiff's testimony was inconsistent with the objective medical evidence because "the evidence in the record shows that [plaintiff]'s right upper extremity issues do not cause limitations in excess of those found in the [RFC]." Tr. 36. The ALJ cited X-rays of plaintiff's shoulder from 2020 showing her early glenohumeral and acromioclavicular osteoarthritis with normal alignment and no acute facture. *Id*. (citing Tr.

5271). The ALJ acknowledged that although treatment notes from 2019 and 2020 demonstrate that plaintiff presented with right arm tremor and atrophy, she still presented as alert and in no acute distress. *Id.* (citing Tr. 600, 848-49, 870, 1866, 1928, 2204-05, 2756-57, 2787-88, 2853, 2860-61, 3486, 3561, 3711, 3959, 3981). However, the medical record demonstrates that plaintiff's subjective complaints were consistent with treatment records. Plaintiff testified that her tremor is "ongoing." Tr. 53. Plaintiff also testified that her tremor prevents her from doing many activities with her dominant right hand, such as using a computer, texting, or lifting objects. Tr. 54-55. Despite the ALJ's dismissal of plaintiff's tremor and assertion that it does not cause limitations in excess of those found in the RFC, much of the objective evidence the ALJ cites supports, rather than detracts from plaintiff's testimony:

> Exam notes from January, March, June, and December of 2019 and April, June, and September of 2020 show that the claimant demonstrated normal range of motion throughout, including her neck and extremities, with no focal neurological deficits, no cranial nerve deficits, no sensory deficits, no motor weakness, 5/5 strength, stable gait, and she was in no acute distress, though she did have an intermittent right upper extremity tremor.

> Dr. Kroening-Roche noted in October of 2020 that the claimant was in no distress, though she did exhibit a fine right upper extremity tremor with her arm raised. He saw the claimant again in November of 2020 and his notes show that the claimant exhibited diffuse right arm atrophy in the shoulder and upper arm as well as resting right arm tremor with some muscle spasm through the right shoulder and scapular border. However, Dr. Kroening-Roche also found that she was in no acute distress and provided her with a trigger point injection of the right shoulder. He also specifically noted in both the October and November appointments that the claimant's tremor has no known origin.

> Exam notes also indicate that her atrophy was stable, though her resting tremor and pain persisted and she had some tenderness to palpitation of the right shoulder, and she otherwise moved without issue, to include full motor strength and sensation of the left upper extremity and no ataxia or difficulty ambulating.

Tr. 36-37 (internal citations omitted).

PAGE 14 – OPINION AND ORDER

The only explanation the ALJ provided in conjunction with the objective evidence was that the RFC took into account plaintiff's right shoulder disorder with the "exertional and manipulative limitations" and the restrictions related to "climbing ladders, ropes, and scaffolds, crawling, and avoiding hazards." Tr. 37. The ALJ failed to explain how "never climbing ladders, ropes, or scaffolds" but "occasionally reach[ing] overhead with the right upper extremity" and "frequently handl[ing] and finger[ing] with right upper extremity" relates to or would account for the many observations of plaintiff's right arm atrophy and resting tremor. Tr. 32-33. Although the clear and convincing standard provides the ALJ some leeway, the Court will not infer what the ALJ meant. the Court's review is limited to the reasons actually cited by the ALJ in his decision. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") Accordingly, the ALJ's rejection of plaintiff's testimony concerning her right arm tremor and atrophy as inconsistent with the medical records was not supported by substantial evidence.

### D.    Activities of Daily Living

The ALJ also discounted plaintiff's subjective symptom testimony about her physical symptoms because it was inconsistent with her reported daily activities. Tr. 33. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. Even when they do not show transferable work skills, daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Here, the ALJ specifically identified plaintiff's reports about her difficulties with her right arm and hand. Tr.

33. Then, the ALJ contrasted those reports with evidence showing that plaintiff was more functional than she alleged. *Id*. Specifically, the ALJ noted that plaintiff prepared simple meals, performed basic chores, went outside alone, spent time on her patio, went on walks, rode in a car with others, used public transportation, paid bills, counted change, managed savings and checking accounts, played games on her phone, watched television, spoke with family, housemates and strangers, attended doctor appoints and AA meetings on Zoom. *Id.* (citing Tr. 301-08).

Plaintiff argues that none of the observed activities of daily living offer any insight as to her right upper extremity capacities, nor do they provide an "understanding of her ability to sustain work over the course of each eight-hour workday." Pl.'s Opening Br. 10. The Court agrees.

First, most of the activities are basic in nature, with some requiring nothing more than minimal attention (i.e., playing games on her phone) and others requiring only a modicum of physical exertion (i.e., sitting on her patio, watching television, and walking a block and a half to the convenience store). Tr. 33. This Court has recognized that absent additional explanation by an ALJ, these types of activities lack probative value in assessing a claimant's mental and physical abilities to sustain full-time work. *See e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)) (many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (minimal activities such as household chores, often performed with the help of a friend, did not constitute transferability to a work setting). Accordingly, absent a more detailed explanation by the ALJ in this case, it is unclear how the performance of any of

these activities contradicts plaintiff's subjective complaints of her inability to use her right arm and hand throughout the day.

Second, the ALJ placed undue weight upon plaintiff's ability to perform basic activities of daily living. The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits[.]" *Fair*, 885 F.2d at 603. The ALJ correctly pointed out that plaintiff prepares simple meals, spends time out on her patio, and rides in a car with others. Tr. 33. But the ALJ incorrectly stated that she is able to sweep and mop on her own and failed to consider that plaintiff does not bear these responsibilities singlehandedly—indeed, plaintiff's testimony and function report make clear that her roommates and a friend must encourage and assist plaintiff with any household chores. Tr. 58, 304. Thus, plaintiff's ability to perform simple activities such as walking to the convenience store every one or two weeks and playing games on her phone is not particularly probative of her ability to satisfy the stress demands of competitive work on a consistent basis. Because the ALJ erroneously evaluated plaintiff's activities of daily living, substantial evidence does not support the ALJ's decision.

## IV.    Medical Opinion

Plaintiff alleges that the ALJ failed to properly address the medical opinion provided by Jason Kroening-Roche, MD. Pl.'s Opening Br. 14-17. Specifically, she argues that the ALJ's reasoning for rejecting her provider's medical opinion is invalid, including that he provided no explanation for how Dr. Kroening-Roche's treatment notes were inconsistent with his determination regarding plaintiff's manipulative limitations.

A.    **Legal Standards**

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id*. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id*. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id*. § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id*. § 404.1520c(b)(2)-(3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical

opinions" and "explain how [they] considered the supportability and consistency factors." *Id*. §
404.1520c(b)(2). The court must, moreover, continue to consider whether the ALJ's analysis has
the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even
under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as
unsupported or inconsistent without providing an explanation supported by substantial
evidence."). *Id*.

    **B.    Jason Kroening-Roche, MD**

      Dr. Kroening-Roche has been treating plaintiff since June 2020. Tr. 5305, 2685. He filled
out a questionnaire discussing plaintiff's functional capacity on January 5, 2022. Tr. 5305-08.
Dr. Kroening-Roche indicated that plaintiff suffers from a right arm tremor and right arm
atrophy, with her tremor being a primary symptom. Tr. 5305. He also recommended plaintiff
occasionally lift up to five pounds, frequently lift "0 pounds," and never handle or finger in order
to finely or grossly manipulate. Tr. 5305-06. He stated that plaintiff suffers from a functional
limitation that limits the forceful or repetitive use of her right arm and hand, and that due to her
tremor, she is "unable to functionally use right arm/hand[.]" *Id*. Lastly, he opined that plaintiff
would be off task 20% of the workday and that she would miss two or more days of work per
month due to her impairments. Tr. 5308.

      The ALJ found this opinion to be "unpersuasive despite Dr. Kroening-Roche's status as a
long-time treating source because the limitations he assesses – exertional, postural, manipulative,
mental and otherwise – are significantly overstated, inconsistent with the assessments of all four
of the state agency evaluators . . . and unsupported by the evidence in the file" including Dr.
Kroening-Roche's own treatment notes. Tr. 38. The ALJ points to records showing plaintiff's
positive response to steroid injection therapy and her unremarkable nerve conduction study and a

recent radiological report, all of which show that much less "restrictive limitations are warranted." *Id*. Plaintiff argues that "the ALJ's conclusion that Dr. Kroening-Roche's treatment notes somehow undermined his opinion was unexplained." Pl.'s Opening Br. 16. Plaintiff asserts that the record repeatedly demonstrates plaintiff's ongoing right hand tremor and observable right arm atrophy, and that Dr. Kroening-Roche's assessment of plaintiff's capabilities is not inconsistent with his treatment notes. The Court agrees.

When looking to Dr. Kroening-Roche's treatment notes the ALJ cites to underpin his conclusion, they support, rather than detract from Dr. Kroening-Roche's opinion. For example, the ALJ first cites Dr. Kroening-Roche's treatment notes from February 6, 2021, and his objective observations are that "atrophy of right shoulder/arm is stable. Resting tremor of right arm." Tr. 38 (citing Tr. 5102-03). The next treatment note the ALJ cites endorses plaintiff's sobriety and that she still has "ongoing" right arm atrophy/weakness. Tr. 5105. The ALJ next cited treatment notes from November 23, 2020, which state "[p]rofound atrophy noted in recent exams" and that she has had "no improvement from trigger point injections[.]" Tr. 5112. Next, on physical exam, plaintiff presented with a "[f]ine resting tremor, persistent throughout visit, of right arm." Tr. 5115. The ALJ provided no explanation as to how these observations fail to support Dr. Kroening-Roche's opinion. The ALJ also fails to explain how these observations demonstrate a "significant[] overstate[ment]" of plaintiff's functional limitations, and the Court will not draw conclusions that were not initially made by the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (The court must review the ALJ's decisions based on the reasons and findings actually provided, not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking).

PAGE 20 – OPINION AND ORDER

Absent meaningful consideration of the supportability factor of Dr. Kroening-Roche's medical opinion by the ALJ, such an error requires remand. Had the ALJ done so, he could not have ignored plaintiff's inability to frequently handle and finger with the right upper extremity due to her right arm atrophy and tremor. This error ultimately affected the ALJ's finding of not disabled. Consequently, the ALJ's error is rendered not harmless and requires reversal. *Treichler*, 775 F.3d at 1099.

## V.     Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210. Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). As relevant here, the Court may only remand for payment of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Plaintiff asserts that this case should be remanded "for the payment of benefits or a new administrative hearing[.]" Pl.'s Opening Br. 20. This Court need not engage in a detailed discussion of the credit-as-true standard because "Plaintiff has not meaningfully argued that remand for an immediate award of benefits is appropriate here." *Marshall M. v. Comm'r Soc. Sec. Admin*., No. 3:23-CV-00039-SB, 2024 WL 2317386, at *9 (D. Or. May 22, 2024); *see*

*Alicia D. v. Kijakazi*, No. 3:20-cv-01222-SB, 2022 WL 891786, at *11 (D. Or. Mar. 3, 2022) ("The Court must remand this case for further proceedings because Plaintiff has not met the credit-as-true standard (as she appears to acknowledge by not briefing the issue)."), *findings and recommendation adopted*, 2022 WL 888297 (D. Or. Mar. 25, 2022). Instead, this Court concludes there are ambiguities in the record concerning Plaintiff's limitations, and further proceedings would serve a useful purpose. On remand, the ALJ must reevaluate the Plaintiff's symptom testimony and the testimony of Jason Kroening-Roche, MD, formulate a new RFC, and obtain new VE testimony that accurately includes plaintiff's manipulative limitations with her right upper extremity.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 9th day of October, 2024.

ANDREW HALLMAN
United States Magistrate Judge